UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SUZANNE LLOYD,

        Plaintiff,

v.                                        Case No:  2:16-cv-290-FtM-99MRM

ALL MY SONS MOVING AND
STORAGE OF SOUTHWEST
FLORIDA, INC.,

        Defendant.

_____/

## ORDER[1]

    This matter comes before the Court on Defendant All My Sons Moving and Storage of Southwest Florida, Inc.'s Motion to Dismiss (Doc. #15) filed on June 3, 2016.  Plaintiff Suzanne Lloyd filed a Response in Opposition (Doc. #17) on June 15, 2016.  The matter is ripe for review.

### Background[2]

    In September 2013, Plaintiff hired Defendant to move her belongings from Naples, Florida, to Old Lynne, Connecticut, with the exact delivery date to be set in the future. (Doc. #1 at 2).  In the meantime, Plaintiff arranged for Defendant to hold her belongings in a storage facility.  (Doc. #1 at 2).  Plaintiff witnessed Defendant load her belongings

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

[2] The Complaint (Doc. #1) alleges the following facts, which the Court accepts as true for the purpose of deciding the instant Motion to Dismiss. *See Speaker v. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention,* 623 F.3d 1371, 1379 (11th Cir. 2010).

onto a truck and noted that her belongings were not damaged in the loading process and were properly wrapped to preserve their state.  (Doc. #1 at 2).

In June 2014, Plaintiff contacted Defendant to schedule a delivery date.  (Doc. #1 at 2). On July 1, 2014, Defendant alerted Plaintiff "that it had no idea when her furniture would leave storage in Florida as it was waiting on a truck, and they had all broken down." (Doc. #1 at 2).  Defendant promised to alert Plaintiff at least one day before the belongings were to be delivered.  (Doc. #1 at 2).  Instead of adhering to his promise, Defendant called Plaintiff on July 11th at 9:30 a.m., telling her that the truck would arrive in seven minutes. When Plaintiff arrived home, she noticed that the truck contained only one fourth of her belongings, and the belongings in the truck were unwrapped.  (Doc. #1 at 3).

Defendant's employees instructed Plaintiff that the remainder of her furniture was on a second truck that had also broken down and that the second truck would arrive the next morning.  (Doc. #1 at 3).  At the same time, however, the employees demanded $6859 from Plaintiff to unload the truck, despite the fact that this amount was $2000 more than the contract price.  (Doc. #1 at 3).  Eventually, the employees accepted $5013 and off-loaded the belongings on the first truck into Plaintiff's garage, promising Plaintiff that the employees coming with the second truck would load the belongings into the house. (Doc. #1 at 3).

Eight days later, the second truck arrived.  (Doc. #1 at 3).  To Plaintiff's dismay, this truck did not contain the remainder of her belongings.  (Doc. #1 at 3).  And the belongings that it did contain were unwrapped and damaged.   Plaintiff contacted Defendant, who "admitted it was responsible for the delays in delivery of [her] furniture . . . and promised to compensate [her] for the delay in damages."  (Doc. #1 at 3).  The third

truck arrived one week later, after missing six scheduled delivery times.  (Doc. #1 at 3).

Again, not all of Plaintiff's belongings were on the truck.  (Doc. #1 at 3).  Five days later,

a fourth truck arrived.  (Doc. #1 at 4).  Remarkably, not all of Plaintiff's belongings were

on this truck either.  (Doc. #1 at 4).  Defendant alerted Plaintiff that it would ship the small

remaining amount of her belongings that it had.  (Doc. #1 at 4).

Over the next several months, the parties engaged in settlement negotiations, but

were unable to resolve their issues.  (Doc. #1 at 4-6).  Therefore, Plaintiff filed the instant

action asserting three claims: Breach of Contract (Count 1); Liability of Carrier Under the

Carmack Amendment (Count 2); and Intentional Infliction of Emotional Distress (Count

3).  (Doc. #1 at 6-9).

## Discussion

Defendant seeks to dismiss Plaintiff's breach of contract and intentional infliction

of emotional distress claims on the basis that these claims are preempted by the Carmack

Amendment, 49 U.S.C. § 14706.  In support, Defendant points to actions, including some

from the Eleventh Circuit, where courts have dismissed similar claims on preemption

grounds.  Plaintiff disagrees and argues that the two claims at issue relate to the storage

of Plaintiff's belongings, rather than the interstate shipment of them.  This distinction,

Plaintiff explains, allows these claims to escape preemption by the Carmack Amendment.

The Court finds Defendant's argument persuasive.

Congress enacted the Carmack Amendment to "create[] a uniform rule for carrier

liability when goods are shipped in interstate commerce."  *Smith v. United Parcel Serv.,*

*296 F.3d 1244, 1246 (11th Cir. 2002)* (citations omitted).  To accomplish uniformity, the

Carmack Amendment "preempts state law claims arising from failures in the

transportation and delivery of goods." *Id.*  Stated differently, "Carmack Amendment preemption embraces . . . all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation." *Id.* at 1247 (citations omitted).  The Carmack Amendment does contain a savings clause, however, which "preserves rights and remedies 'not inconsistent with the rules and regulations prescribed by the provisions of [the] act." *Id.* (citations omitted)*.*  But this clause typically only allows "claims based on conduct separate and distinct from the delivery, loss of, or damage to goods [to] escape preemption." *Id.* at 1249 (citations omitted).

Turning to this action, the Carmack Amendment preempts Plaintiff's intentional infliction of emotional distress claim.  As the basis for this claim, Plaintiff alleges that Defendant repeatedly made promises that her belongings would be delivered in a timely manner, knowing that no such delivery would occur.  This allegation, focusing solely on Defendant's failure to deliver the belongings, falls squarely within "the preemptive scope of the Carmack Amendment," and therefore this claim must be dismissed.  *Id.*; *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 383 (5th Cir. 1998) (dismissing the plaintiff's intentional infliction of emotional distress claim as preempted by the Carmack Amendment).

Plaintiff's breach of contract claim fares no better.  Unlike the intentional infliction of emotional distress claim, Plaintiff does not rely solely on Defendant's failure to deliver her belongings for support.  Plaintiff instead alleges that she executed a contract with Defendant for the storage of her belongings, which was separate and distinct from the contract to ship her belongings.  While these allegations focus on conduct separate and distinct from the delivery of her belongings, Plaintiff fails to allege any conduct that is

separate and distinct from the loss of or damage to her belongings.  *See Smith*, 296 F.3d at 1248-49 ("[O]nly claims based on conduct separate and distinct from the delivery, *loss of, or damage to* goods escape preemption.") (emphasis added).  Plaintiff also fails to illustrate that the storage of her belongings was not part of the "agreed transportation." Even assuming Plaintiff and Defendant executed a separate contract for storage, Defendant maintained possession of the belongings from the time they left Plaintiff's Florida residence until they were delivered to her Connecticut residence.  This illustrates that storage of the belongings was part of the agreed transportation.  *See Smith, 296 F.3d at 1247*.  Based on the foregoing, the Court finds that the Carmack Amendment preempts Plaintiff's breach of contract claim, and therefore this claim must be dismissed as well.

Accordingly, it is now

**ORDERED:**

1. Defendant All My Sons Moving and Storage of Southwest Florida, Inc.'s Motion to Dismiss (Doc. #15) is **GRANTED**.

2. Plaintiff's Breach of Contract (Count 1) and Intentional Infliction of Emotional Distress (Count 3) claims (Doc. #1) are **DISMISSED**.

**DONE** and **ORDERED** in Fort Myers, Florida, this 18th day of July, 2016.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

5